FILED

2015 Nov-25  AM 08:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

DAVID LOLLEY,                          )
                                       )
    Plaintiff,                       )
                                       )
  vs.                                  )                    Case No. 6:14-cv-01465-TMP
                                       )
CAROLYN W. COLVIN,                     )
Commissioner of Social Security,       )
                                       )
    Defendant.                       )


## MEMORANDUM OPINION

### I.     Introduction

The plaintiff, David Lolley, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI").   Mr. Lolley timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Lolley was thirty-three years old on the date his application was filed, and he had a limited education, but which includes a GED.  (Tr. at 30).  His past work experience includes employment as an assembler of manufactured buildings,

mobile home service person, waiter, and trouble shooter/customer service analyst. (*Id.*)  Mr. Lolley claims that he became disabled on July 7, 2011, due to disc and spine disease, chest pains resulting from open heart surgery, vertigo, and anxiety. (Tr. at 17, 170).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite his or her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent him from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*  The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; and, once that burden is met, the claimant must prove his or her inability

to perform those jobs in order to be found disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ determined that Mr. Lolley has not engaged in substantial gainful activity since the alleged onset of his disability. (Tr. at 19). According to the ALJ, Plaintiff's depression, anxiety with panic disorder, adjustment disorder, post-traumatic stress disorder ("PTSD"), aortic insufficiency, heart failure, diastolic dysfunction, aortic aneurysm, bicuspid aortic valve and valve replacement, vertigo, lumbago, and chronic fatigue syndrome are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24). The ALJ determined that Mr. Lolley's claims regarding the intensity and limiting effects of his impairments were not fully credible. (Tr. at 26). He determined that the plaintiff had the RFC to perform light work, only occasionally climbing, balancing, stooping, kneeling, crouching, or crawling. (Tr. at 25). The plaintiff cannot climb ladders, ropes, or scaffolds, and should avoid concentrated exposure to cold or heat and all exposure to unprotected heights and dangerous machinery. (*Id.*) The ALJ found that the plaintiff can perform unskilled work in a

low-stress work environment, with casual interaction with the general public, coworkers, and supervisors. (*Id.*)

According to the ALJ, Mr. Lolley is unable to perform any of his past relevant work. (Tr. at 30). The plaintiff is a younger individual, has a limited education, and is able to communicate in English, as those terms are defined by the regulations. (*Id.*) The ALJ determined that transferability of job skills is not material to the determination of the plaintiff's case. (*Id.*) He found that Mr. Lolley has the residual functional capacity to perform a significant range of light work. Even though the plaintiff cannot perform the full range of light work, the ALJ determined that there is a significant number of jobs in the national economy that he is capable of performing, such as mail clerk, assembler, and wire worker. (Tr. at 31). The ALJ further determined that the plaintiff could perform sedentary, unskilled jobs such as assembler, grader/sorter, and hand packer. (*Id.*) The ALJ concluded his findings by stating that the plaintiff "has not been under a disability, as defined in the Social Security Act, since July 7, 2011, the date the application was protectively filed." (*Id.*)

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there

is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal

standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."   20 C.F.R. §§ 404.1527(e), 416.927(d).   Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.   Discussion

Mr. Lolley argues that the ALJ's decision should be reversed and remanded for several reasons.  First, he argues that his Parkinson's disease should have been listed as a severe impairment.  Second, he also argues that the ALJ had a duty to

expand the record if he had any questions regarding the plaintiff's Parkinson's diagnosis. Third, the plaintiff contends that the ALJ was incorrect in determining that the plaintiff's impairments do not render him disabled because the ALJ failed to include the plaintiff's chronic fatigue and shortness of breath in his hypothetical questions to the Vocation Expert. Finally, the plaintiff argues that Dr. Blotcky's Medical Source Opinion Form should have been given greater weight.

### A. Parkinson's Disease

The plaintiff claims that he suffers from Parkinson's disease, for which he takes medication, and that his Parkinson's should have been considered by the ALJ as a severe impairment. In his records from North Mississippi Medical Center on October 25, 2011, the plaintiff denied having tremors. (Tr. at 450). However, on December 23, 2011, the plaintiff reported to Dr. Simieritsch at Winston County Medical Clinic that he was diagnosed with Parkinson's three months prior. (Tr. at 475). He also reported irregular tremors all over his body which were not improved with medication. (*Id.*) Dr. Simieritsch noted that the plaintiff "has a definite intention tremor on finger to nose testing." (Tr. at 478). He opines that the tremor "could be due to parkinsonism, a medication reaction and/or other causes." (*Id.*) The plaintiff's records from Dr. Kerr on November 10, 2011, indicate that he was prescribed Propranolol for tremors and Robaxin for muscle

spasms. (Tr. at 675). However, under the section titled "all problems," Dr. Kerr did not list Parkinson's Disease or tremors. (Tr. at 675-76). Dr. Kerr noted that the plaintiff reported "shaking" and requested medication for it. (Tr. at 677). He stated that the plaintiff did have a tremor, so he prescribed the propranolol. (*Id.*) The plaintiff reported for a follow-up visit with Dr. Kerr on November 21, 2011. (Tr. at 681). At that visit the plaintiff reported that he still was experiencing tremors. (Tr. at 678). Dr. Kerr did not change his tremor medication at that visit.

When the plaintiff saw Dr. Kerr again on January 17, 2012 (Tr. at 682), he did not discuss his tremors, and Dr. Kerr did not adjust his medication. Dr. Kerr did, however, list "tremor" as one of the plaintiff's problems. (Tr. at 685). The plaintiff saw Dr. Kerr again on March 26, 2012. (Tr. at 688). The plaintiff noted tremors, and Dr. Kerr kept him on the same medication. (Tr. at 689). On April 12, 2012, the plaintiff did not discuss tremors and his medication was not adjusted. (Tr. at 695). Although tremors were noted in Dr. Kerr's records, the plaintiff never was affirmatively diagnosed with Parkinson's disease. Furthermore, despite the plaintiff's contention that his tremors do not respond to medication, the record seems to indicate that the medication helps control the tremors, because the plaintiff never asked for his dose to be increased or to try a different medication.

The ALJ did not address the plaintiff's tremors in his opinion.  However, the ALJ is not required to refer to every piece of evidence in his determination, so long as his denial of the plaintiff's claim is not an arbitrary dismissal that does not consider the plaintiff's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).  A review of the ALJ's RFC determination persuades the court that the ALJ did consider the plaintiff's medical condition as a whole.  After considering the entire record, the ALJ determined that the plaintiff has several severe impairments, but that those impairments allow the plaintiff to perform light work with several exceptions.  It is not the purview of the court to make factual determinations or reweigh the evidence, so long as the ALJ's decision is supported by substantial evidence.

Additionally, the plaintiff's argument that the ALJ failed to make a finding that he Parkinson's was a "severe impairment" at the second stage of the five-stage analysis does not alter the analysis.  The ALJ found that plaintiff has a number of severe impairments, and therefore, the analysis proceeded to the next step.  As the court of appeals has explained:

> At step two the ALJ must determine if the claimant has any severe impairment. This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that

together qualify as severe, is enough to satisfy the requirement of step two. *See, e.g., Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also Cantrell v. Bowen,* 804 F.2d 1571, 1573 (11th Cir.1986); *McDaniel*, 800 F.2d at 1031.

*Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).  Thus, as long as the ALJ finds "any" severe impairment at the second step of the analysis, it proceeds to the third step.  The failure of the ALJ to find a particular medical condition to be a "severe impairment" does not prejudice the plaintiff as long as "any" severe impairment is found and the analysis proceeds to the next step.

In light of the medical records and subjective testimony addressed in the ALJ's opinion, the court is convinced that the ALJ's determination is supported by substantial evidence.  His failure to find the plaintiff's Parkinson's a "severe impairment" did not preclude the ALJ from making a complete finding of the plaintiff's alleged disability.

### B. Duty to Expand the Record

The plaintiff argues that, "[i]f the ALJ had any questions about the medical documentation for the claimant's Parkinson's/tremors, he should have sent him for consultative testing on that issue." (Doc. 13, p. 11).  The ALJ's duty to develop the record is not triggered when the record contains sufficient evidence to make an informed decision.  *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269

(11th Cir. 2007).   The Eleventh Circuit has determined that a consultative examination must be ordered if one is needed to make an informed decision regarding the claimant's disability.   *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984), citing *Ford v. Secretary of Health and Human Servs.*, 659 F.2d 66, 69 (5th Cir. 1981) (Unit B).   An ALJ may request a consultative examination "to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" if the record indicates "a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established."   20 C.F.R. § 404.1519a(b)(4).

However, if the record is sufficiently developed for the ALJ to make a determination, it is not necessary for the ALJ to order an additional consultative examination or to expand the record.   *Good v. Astrue*, 240 Fed. Appx. 399, 403-404 (11th Cir. 2007).  In the instant case, the ALJ had available:

- Emergency department records from: Walker Baptist Medical Center dated June 2008; Marion Regional Medical Center dated January 2008 to March 2012;

- Office Treatment Records from: Nelson K. Little, MD, FAAC, dated January to July 2009; David Talton, MD, FACS, dated January to March 2009; Carol Grace, MD, dated December 2008 to May 2009; Northwest Alabama Mental Health dated October to June 2012; Hamilton Medical Clinic dated January 2010 to October 2012;

- Hospital Records from: North Mississippi Medical Center dated March 2009 to October 2011; Lakeland Community Hospital dated January to March 2012;

- Consultative Psychological Examination Reports from: Jerry Gragg, Psy.D, dated August 2009; Jack Bentley, Jr., Ph.D., dated November 2011; and Alan D. Blotcky, Ph.D., dated November 2012;

- Consultative Physical Examination from: Bernard Simieritsch, M.D., dated December 2011;

- Physical RFC Assessment from: M.D. Jackson, dated December 2001;

- Mental RFC Assessment and Psychiatric Review Technique from: Gloria Roque, Ph.D, dated January 2012; and

- Miscellaneous Medical records from: Gateway Disc Apothecary dated February 2008 to October 2012.

The record was sufficiently developed to allow the ALJ to make an RFC determination without seeking an additional consultative examination or further information from Dr. Kerr.

### C. *Vocational Expert Testimony*

The plaintiff asserts that the ALJ's determination is not supported by substantial evidence because he did not include in his questions to the VE limitations imposed by the plaintiff's fatigue and shortness of breath. (Doc. 13, p. 11). The plaintiff reported to Dr. Barnes at the North Mississippi Medical Center on October 25, 2011, that he had "no energy." (Tr. at 450). Dr. Barnes noted that

the plaintiff "has some ... fatigue. . ." (*Id*.)  The plaintiff reported for disability determination to Winston County Medical Clinic on December 23, 2011.  (Tr. at 475).  He was assessed as having chronic fatigue syndrome, and it was noted by Dr. Simieritsch that the plaintiff "fatigues easily with minimal physical effort."  (Tr. at 478).  He reported extreme fatigue in July 2011 at Lakeland Community Hospital. (Tr. at 523-24).  Dr. Kerr's notes from March 23, 2010, note that the plaintiff fatigues easily.  (Tr. at 619-620).  However, the plaintiff denied fatiguing easily at his appointment with Dr. Kerr on June 10, 2010, and again on June 17, 2010, and December 22, 2010.  (Tr. at 623-24, 28-29, 32-34).

He again reported a tendency toward fatigue on March 23, 2011, and June 17, 2011.  (Tr. at 638-40, 644-45).  On August 12, 2011, the plaintiff reported for a follow-up appointment with Dr. Kerr after he had gone to the hospital for chest pain.  (Tr. at 650).  At the appointment, he reported that he fatigues easily.  (Tr. at 652).  The plaintiff reported sleep disorders to Dr. Kerr on September 15, 2011. (Tr. at 655-66).  In the records signed by Dr. Kerr on November 10, 2011, fatigue is listed as one of the plaintiff's new problems, along with his tremor.[1]  (Tr. at 675-76).  On his November 10, 2011 appointment, the plaintiff denied fatigue, but reported it again at his January 17, 2012, appointment.  (Tr. at 678-79, 682-83).  On

---

[1]  Despite being signed by Dr. Kerr on November 10, it appears that the records reflect an office visit prior to that date.  The initial pages of the records are not included, however.  Accordingly, the court is unable to determine the date of the plaintiff's appointment.

March 26, 2012, he stated that he was having trouble sleeping, but denied fatigue. (Tr. at 688, 690).  The plaintiff testified that his shortness of breath and fatigue are symptoms of his heart surgery and that he was told prior to surgery that he "would have shortness of breath and fatigue" as a result of the surgery.  (Tr. at 47).  He testified that he will lie down for up to four hours per day when he has pain.  (*Id.*) In his hypothetical to the VE, the ALJ limited the plaintiff's ability to a limited range of light or sedentary work.  (Tr. at 53).

The plaintiff alleges that "the ALJ did not take the claimant's fatigue into account at all in his questions to the VE."  (Doc. 13, p. 11).  He argues that because he testified to having severe fatigue and shortness of breath, the ALJ was obligated to address those problems in his questions to the VE.  The ALJ's examination of the VE transpired as follows:

> Q    Ms. Schulman, please assume a hypothetical person who is 23[2] years of age, 10 years of formal education and later received a GED with the past relevant work you described earlier limited to a limited range of light work.
> Occasionally climb, balance, stoop, kneel, crouch, crawl. Avoid ladders, ropes scaffolds, concentrated exposure to cold and heat.  No unprotected heights, dangerous machinery, operation of motor vehicles such as cabs, trucks, forklifts.

---

[2]   Although the plaintiff testified that he was 34 years old at the hearing (tr. at 42), it appears that the ALJ's inadvertent hypothetical regarding someone who was 23 years old was a harmless error.

Can this hypothetical individual do the past work of the claimant?

A      That would allow for the troubleshooter, sedentary.  It would also allow for the server as generally performed in the *Dictionary of Occupational Titles*.

Q      Please assume an individual who should have only occasional and gradual contact with the general public, supervisors and coworkers.   Moderate difficulty with social functioning and in maintaining concentration, persistence, and pace.   Would that eliminate the jobs of waiter and troubleshooter.

A      Yes, sir.  It would.

Q      Would there be any work that the individual I last described would be able to perform in the State of Alabama or the United States economy?

A      Yes.

. . .

Q      I'm going to change the physical restrictions.  Consider the same modification to light work.  This individual would be able to perform only sedentary exertional activity.  Would there be any work that this individual can perform?

A      Yes

. . .

Q      Take the same individual and the limitations that have been identified today by the claimant in his testimony and impose those on our hypothetical individual the same age, education, and work the claimant has performed in the past.  Can he do the same work the claimant performed?

A     No, sir.

Q     Would the jobs at light be available to that individual?

A     No, sir.

Q     Would the jobs at sedentary be available to that individual?

A     No, sir.

Q     Would there be any work in the State of Alabama or the US economy that the last person I described would be able to perform?

A     No, sir.

(Tr. at 52-55).

The plaintiff testified during the hearing that shortness of breath and chronic fatigue were persistent symptoms of his heart disease and surgery and that he had to lie down for several hours a day due to pain.  (Doc. 7-3, p. 47).  By asking the VE about "the limitations that have been identified today by the claimant in his testimony," it appears that the ALJ did ask the VE a hypothetical that included all of the claimant's impairments, as alleged.  The fact that the ALJ did not specifically reference fatigue and shortness of breath does not render his decision unsupported by substantial evidence.  The ALJ listed chronic fatigue syndrome as one of the plaintiff's severe impairments.  (Tr. at 19).   He addressed the plaintiff's chronic

fatigue when determining that the plaintiff does not have an impairment or combination of impairments that meet a listing.  (Tr. at 24).  He noted, regarding the plaintiff's chronic fatigue as well as his other severe impairments that "the record indicates that the treatment he has received has essentially been routine and conservative in nature and has generally been successful in controlling his symptoms."  (Tr. at 26).

Although the ALJ did not list shortness of breath as its own impairment, he did note plaintiff's heart condition as a severe impairment, a symptom of which is shortness of breath.  The ALJ is not required to refer to every piece of evidence in his determination so long as his denial of the plaintiff's claim is not an arbitrary dismissal that does not consider the plaintiff's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted).  In light of the medical records and subjective testimony addressed in the ALJ's opinion, the court is convinced that the ALJ did consider the plaintiff's medical condition as a whole.

The VE's testimony that, if all of the plaintiff's allegations regarding the severity and limiting effect of his impairments were taken as true, there would be no work the plaintiff could perform is not conclusive.  The ALJ is authorized to make credibility determinations regarding the plaintiff's subjective testimony.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or

formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In the instant case, the ALJ determined that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but ultimately determined that the plaintiff's testimony regarding the limiting effects, intensity, and persistence of his symptoms were not credible. (Tr. at 26). The ALJ then engaged in a lengthy discussion of the plaintiff's subjective testimony about his physical and mental impairments in comparison to the other evidence in the record. (Tr. at 26-27). Finally, the ALJ made the following determinations regarding the plaintiff's alleged activities of daily living:

> Although the claimant has described activities which are fairly limited, two factors weight against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

. . .

> The undersigned notes that as for opinion evidence, given the claimant's allegations of disabling pain symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating physician.  Yet, a review of the record indicates the record does not contain any opinions from treating or examining physicians that indicate the claimant is disabled or even has limitations greater than those determined in this decision.

(Tr. at 26-29).

It appears to the court that the ALJ specifically asked the VE whether a claimant with Mr. Lolley's impairments at the level of severity claimed by plaintiff would be able to work.  However, due to the evidence found in the record, the ALJ ultimately determined that Mr. Lolley's subjective allegations regarding his symptoms were not credible and, therefore, the VE's answer to the posed hypothetical was not applicable to the ALJ's RFC determination.  The ALJ specifically alleged the plaintiff's allegations of pain in his opinion and provided explicit and reasonable reasons for rejecting the testimony.  The objective medical and other evidence supports the ALJ's conclusion that the plaintiff's condition did not cause disabling limitations.

### D. Examining Physician Opinion

Finally, the plaintiff argues that the ALJ failed to properly credit the findings of Dr. Blotcky, an examining psychologist. (Doc. 9 at 3.) While a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary," *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted), the testimony of a consulting physician carries no particular weight but must be assessed by the ALJ with all other medical evidence. The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of

disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  The court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440.  Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

The ALJ gave little weight to Dr. Blotcky's assessment of the plaintiff's physical and mental limitations, stating:

> When the claimant saw Dr. Blotcky on November 8, 2012, he admitted he spent his time watching television, he visited with a friend at home, and he saw his parents and brother on a regular basis. Claimant was appropriated [sic] attired and nicely groom [sic] and he wore clothes that were clean and neat.
>
> . . .
>
> Dr. Blotcky only saw the claimant on one occasion.  The undersigned notes that it appears Dr. Blotcky's assessment was based primarily on the claimant's subjective complaints, as it is not supported by the weight of the evidence which shows the claimant had undergone two previous mental assessments and neither assessment found any significant limitations that would prevent him from performing any work. . . .
>
> In summary, the undersigned finds that the evidence suggests that the claimant is limited, but he is able to perform the work of a light

exertional level. This conclusion is supported by objective medical evidence outlined above. While the claimant may not be able to perform work activity requiring a greater level of exertion, he could none-the-less perform work within the residual functional capacity stated above. The undersigned finds that the claimant's allegations to the contrary are not found to be supported by the record as a whole.

(Tr. at 28-30).

As addressed previously, the ALJ must consider several factors in determining the weight to be given to a medical opinion. 20 C.F.R. § 404.1527(c). Different types of medical sources are entitled to differing weights. The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. A non-treating physician or psychologist, who has examined the patient but does not treat the patient, is entitled to less weight. The least weight is given to a non-examining medical source, who may provide an opinion based on the record but who has not examined the patient. 20 C.F.R. § 404.1502. Any medical source's opinion can be rejected where the evidence supports a contrary conclusion. *See, e.g., McCloud v. Barnhart*, 166 Fed. App'x 410, 418-19 (11th Cir. 2008). Even the opinion of a treating physician can be disregarded where "good cause" is shown. *Crawford v. Commissioner of Social Security*, 363 F.3d 115, 1159 (11th Cir. 1997).

Dr. Blotcky's opinion is that of a consultative psychologist who examined the plaintiff on one occasion, but had no ongoing relationship with him and did not treat him.  Dr. Blotcky based many of his conclusions on the plaintiff's own descriptions of his condition.  His opinion is entitled to weight only to the extent that it is bolstered by the evidence, is not contrary to other medical evidence, does not contradict the opinions of treating physicians, and to the extent that it is not conclusory or inconsistent with his own findings.  In this case, Dr. Blotcky reached the conclusion that the plaintiff would have extreme difficulty responding appropriately to supervisors, customers, or members of the general public, responding to customary work pressures, maintaining attention, concentration, or pace for periods of at least two hours, maintaining social functioning, and maintaining activities of daily living.  (Tr. at 733-34).  He also determined that the plaintiff would have marked difficulty responding appropriately to co-workers or dealing with changes in a routine work setting.  (Tr. at 733).

As the ALJ noted, Dr. Blotcky's conclusion is based primarily on the plaintiff's subjective allegations and is inconsistent with his treatment records. For example, psychologist Jerry Gragg opined that the plaintiff seemed "capable of responding adequately to supervision," and had "adequate social skills to relate to others."  (Tr. at 422).  He further noted that the plaintiff should be able to

"understand, remember, and carry out instructions." (*Id.*) He noted that, with medication, the plaintiff should not have a problem handling work-related stress and noted that any psychological impairment did not "seem to have been problematic for [the plaintiff] at his previous employment." (*Id.*) Jack Bentley, Jr., Ph.D. also opined that the plaintiff appeared to be able to understand and remember simple instructions and respond appropriately to supervision and co-workers. (Tr. at 442-43). Because Dr. Blotcky's conclusion is not bolstered by the evidence and it is contradicted by the assessments of other medical examiners, his opinion is not entitled to any weight. In this case, the ALJ carefully reviewed the plaintiff's other medical records and heeded the opinions therein. The ALJ clearly articulated "good cause" for the limited weight he gave to Dr. Blotcky's assessment as a consultative examiner; therefore, the ALJ did not commit reversible error.

## IV.   Conclusion

The ALJ's determination is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings. The objective medical and other evidence supports the ALJ's conclusion that Mr. Lolley's conditions did not cause disabling limitations and instead shows that she could

perform some work.  Upon review of the administrative record, and considering all of Ms. Hankins' arguments, the Commissioner's decision is due to be AFFIRMED and the action is DISMISSED WITH PREJUDICE.

DONE this 24th day of November, 2015.


_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE